UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WATM LLC d/b/a STEVENS & ASSOCIATES/STEVENS MANAGEMENT SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>PAYMENT ALLIANCE INTERNATIONAL, INC.,<br><br>Defendant. | CASE NO. 2:24-cv-00405-JHC<br><br>ORDER GRANTING MOTION FOR A PROTECTIVE ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Payment Alliance International's Motion for a Protective Order Designating Certain Information as Attorneys' Eyes Only. Dkt. # 33. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court finds oral argument unnecessary. Being fully advised, for the reasons below, the Court GRANTS the motion.

ORDER GRANTING MOTION FOR A PROTECTIVE ORDER - 1

## II

### BACKGROUND

Payment Alliance International (PAI) provides ATM management tools and services for ATMs across the United States. Dkt. # 33-2 at 2 ¶ 2. WATM provides ATM and payment-related services to about 300 merchants. Dkt. # 1-2 at 2 ¶ 2. PAI provides processing services to WATM for their debit, credit, and ATM terminals. Dkt. # 33-2 at 2 ¶ 3.

This matter concerns the use of "scrip" terminals, also known as cashless ATMs. *See generally* Dkt. # 33. PAI says that scrip terminals are prohibited on their platform. Dkt. # 33-2 at 2 ¶ 4. The company adds that the use of scrip terminals can violate Visa's network rules by miscoding the nature of certain transactions to make these transactions falsely appear as ATM cash disbursements. *Id.* at 2 ¶ 5. Visa also imposes fines, up to $50,000 per scrip terminal, for terminals improperly connected to the ATM network. *Id.* PAI says that merchants, to circumvent PAI's prohibition on scrip terminals, change a scrip terminal's Merchant Category Code (MCC) so that the terminal appears as a cash dispensing ATM. *Id.* at 3 ¶ 8. Thus, to distinguish between a cash dispensing ATM and a scrip terminal using the same MCC, PAI uses specific methods to identify scrip terminals masking as cash dispensing ATMs. *Id.* at 3 ¶ 9.

On February 14, 2025, PAI produced documents to WATM, including documents concerning the company's methods for identifying scrip terminals. Dkt. # 33 at 10. PAI designated these documents as Attorneys' Eyes Only (AEO). The parties met and conferred on PAI's AEO designations, and PAI agreed to re-review its documents. Dkt. # 64 (redacted) at 2 ¶ 4. PAI downgraded 736 documents from AEO to confidential. *Id.* at 3 ¶ 9. Currently, 276 documents are designated as AEO. Dkt. # 33-1 (redacted) at 3 ¶ 7. And PAI has designated one interrogatory response as AEO. Dkt. # 33 at 8 n 2.

PAI says that its methods for identifying scrip terminals are trade secrets and disclosure of the documents at issue would harm the company. Dkt. # 33 at 12. WATM responds that PAI has improperly designated these documents as AEO. Dkt. # 33-1 (redacted) at 3 ¶ 8. WATM informed PAI that the AEO designation over these documents would prevent its expert witness, and one of WATM's principals, Steve Townley from reviewing the documents and increase WATM's litigation costs. *Id.* at 2 ¶ 5. PAI now requests that the Court enter a protective order restricting the use and dissemination of these materials to WATM's attorneys only. *See generally* Dkt. # 33.

### III
#### DISCUSSION

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). The party seeking a protective order under Rule 26(c) must establish "'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)). A court may issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed R. Civ. P. 26(c)(1)(G). Washington law defines a trade secret as

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstance to maintain its secrecy.

RCW 19.108.010 (4).

When the moving party's request concerns trade secrets, they must show that (1) the information is "a trade secret or confidential research, development, or commercial information" and (2) disclosure of the information would harm the party's interest therein. *See Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 554 (C.D. Cal. 2007); *Seiter v. Yokohama Tire Corp.*, No. C08-5578 FDB, 2010 WL 254744, at *1 (W.D. Wash. Jan. 19, 2010). Courts may consider factors such as "(1) the ease or difficulty of ascertaining the information from public sources; (2) the measures taken to guard the information's secrecy; (3) the value of the information to the business or to its competitors; and (4) the amount of time, money, and effort expended in development of the information." *Sierra Club v. BNSF Ry. Co.*, No. C13-00967-JCC, 2014 WL 5471987, at *2 (W.D. Wash. Oct. 29, 2014) (internal citations omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

PAI has shown good cause that its methods for identifying scrip terminals are trade secrets. Nathan Wald, PAI's Vice President of Global ATM Product, stated that:

> When scrip terminal users learn how networks identify scrip terminals, scrip terminal users modify the software of the scrip terminals to again mask their true identity as cashless ATM. Over time, it has become very difficult for an Independent Sales Organization – such as PAI – banks, and Visa to identify scrip terminals. Accordingly, *to stay ahead of merchants that improperly activate scrip terminal on the ATM network, PAI, Pathward, and Visa carefully guard the factors they use to distinguish between real ATMs and scrip terminals*.

Dkt. # 33-2 at 3 (emphasis added).[1] PAI has a considerable interest in maintaining the confidentiality of its methods due to the risk that some merchants could use the information to

---

[1] WATM asserts in cursory fashion that PAI could "eas[ily]" find scrip terminals by determining whether a terminal dispenses $5 or $10 denominations. PAI responds that this is not a strong indicator of a scrip terminal because many terminals in its network dispense these denominations. Dkt. # 59. In any event, WATM's contention does not undermine PAI's argument that it has "carefully guard[ed]" methods for detecting scrip terminals.

ORDER GRANTING MOTION FOR A PROTECTIVE ORDER - 4

undercut PAI's efforts to identify scrip terminals in its network. An AEO designation is warranted to protect PAI from disclosing its methods to an entity doing business with hundreds of merchants. *See, e.g.*, *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 610 (W.D. Wash. 2013) ("As [the] [p]laintiff seeks to compete with ZPI in licensing Zorro-related intellectual property, an AEO designation for confidential license agreements and other sensitive business documents is warranted to shield the [d]efendants from the specific harm of providing proprietary information to a competitor."); *UCC Ueshima Coffee Co. v. Tully's Coffee Corp.*, No. C06-1604RSL, 2007 WL 710092, at *2 (W.D. Wash. Mar. 6, 2007) ("Regardless of whether [the] defendant actively uses the information, access to the client list would provide, at no cost to [the] defendant, a near-instant roadmap of how to develop the Tully's brand in the Territories.") (quotation and citation omitted). And PAI has a significant economic interest in identifying the scrip terminals because Visa imposes a fine of up to $50,000 for each scrip terminal that is improperly connected to the ATM network. Dkt. # 33 at 14 (citing Dkt. # 33-2 at 2–3 ¶¶ 4, 11). Although PAI has not been fined by Visa, it still derives economic value in complying with Visa's rules and avoiding fines. Dkt. # 59 at 4.[2]

In response, WATM contends that even if the documents at issue concern trade secrets, designating them as AEO would impose an undue burden. Dkt. # 45 at 10. It says that designating these documents as AEO would "tie WATM's hands" and increase its litigation costs. *Id.* WATM's sole expert, Mr. Townley, is a principal in the company. And Mr. Townley

---

[2] WATM also contends that PAI does not "carefully guard" its methods for identifying scrip terminal because it produced similar information in a case in the Northern District of Texas, *Atmone Inc. v. Payment Alliance International*, Case No. 3:23-cv-0140, without designating the documents as confidential or AEO. Dkt. # 45 at 7. In that case, two documents concerning PAI's methods were filed as evidence in support of the plaintiff's motion for partial summary judgment. Dkt. # 59 at 6. But PAI calls this an "oversight" and says that the documents have been temporarily removed from public access and PAI is seeking to seal the documents. Dkt. # 59 at 7. The Court disagrees with WATM that this type of inadvertent disclosure makes PAI's methods publicly accessible.

ORDER GRANTING MOTION FOR A PROTECTIVE ORDER - 5

will apparently offer his expert opinion on six topics related to scrip terminals. *Id.* at 11; Dkt. # 33 at 15–16. These topics include "how scrip and cashless ATM transactions are processed," "standard practices and procedures in the industry," and "the prevalence of scrip and cashless ATM transactions." Dkt. ## 33 at 16; 45 at 11 (citation omitted). WATM says that, as an expert witness, Mr. Townley needs access to the AEO documents to offer his opinion on PAI's detection methods. Dkt. # 45 at 11.[3] But as pointed out by PAI, the topics Mr. Townley will be testifying about do not concern the factors PAI uses to detect scrip terminals.[4]

Thus, PAI has shown good cause for designating the documents and interrogatory response about its methods for identifying scrip terminals as AEO.

## IV
### Conclusion

Based on the above, the Court GRANTS PAI's motion for a protective order.

Dated this 13th day of June, 2025.

John H. Chun
United States District Judge

---

[3] To compromise on this issue, PAI offered WATM additional time to select a replacement expert. WATM rejected this offer. Dkt. # 33-1 (redacted) at 3 ¶ 9.

[4] As PAI notes, WATM is seeking millions of dollars in damages. Dkt. ## 1-2 at 9, 59 at 6. WATM only cursorily asserts that the designation of these documents as AEO would unduly increase its litigation costs.