1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WATM LLC d/b/a STEVENS & ASSOCIATES/STEVENS MANAGEMENT SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>PAYMENT ALLIANCE INTERNATIONAL, INC.,<br><br>Defendant. | CASE NO. 2:24-cv-00405-JHC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL |

# I

## INTRODUCTION

This matter comes before the Court on WATM LLC's Motion to Compel Defendant PAI's Discovery Responses. Dkt. # 37. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. Being fully advised, for the reasons below, the Court GRANTS in part and DENIES in part the motion.

1

2

## II

### BACKGROUND

3

4

Payment Alliance International (PAI) provides ATM management tools and services for
ATMs across the United States. Dkt. # 33-2 at 2 ¶ 2. WATM provides ATM and payment-
related services to about 300 merchants. Dkt. # 1-2 at 2 ¶ 2. PAI provides processing services to
WATM for its debit, credit, and ATM terminals. Dkt. # 33-2 at 2 ¶ 3.

5

6

7

This matter concerns the use of "scrip" terminals, also known as cashless ATMs. *See
generally* Dkt. # 33. PAI says that scrip terminals are prohibited on its platform. Dkt. # 33-2 at
2 ¶ 4. The company explains that scrip terminals violate network rules by miscoding certain
transactions so that they appear as ATM cash disbursements. *Id.* PAI says that merchants, to
circumvent PAI's prohibition on scrip terminals, change a scrip terminal's Merchant Category
Code (MCC) so that the terminal appears as a cash dispensing ATM. *Id.* at 3 ¶ 8. Thus, to
distinguish between a cash dispensing ATM and a scrip terminal using the same MCC, PAI uses
specific methods to identify scrip terminals masking as cash dispensing ATMs. *Id.* at 3 ¶ 9.

8

9

10

11

12

13

14

15

WATM alleges that its primary revenue sources are "surcharge income" and "interchange
income" from transactions processed through its merchants' debit, credit, and ATM terminals.
Dkt. # 1-2 at 4 ¶ 18. Surcharge income is generated by fees charged to the cardholder. *Id.* at 4
¶ 19. Interchange income is generated by transactions first sent to PAI by a third-party
processor. *Id.* at 4 ¶ 21. PAI sends WATM the surcharge and interchange income at the end of
each month. *Id.* at 5–6 ¶ 30. WATM says that PAI is not to retain any portion of the surcharge
or interchange income. *Id.* at 4 ¶¶ 21–22.

16

17

18

19

20

21

22

In late 2022, PAI launch launched Project "Up in Smoke" to identify scrip terminals in its
network. Dkt. # 33-2 at 4 ¶ 16. In January 2023, PAI ceased remitting the surcharge and
interchange income to WATM. Dkt. # 1-2 at 5–6 ¶ 30. PAI informed WATM that it withheld

23

24

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

the funds because PAI detected WATM's merchants using scrip terminals in violation of PAI's rules. *Id.* at 6 ¶ 36.  WATM estimates that PAI withheld around $2 million in funds. *Id.* at 7 ¶ 45.

In March 2024, WATM sued PAI.  Dkt. # 1-2.  WATM brings three causes of action: (1) conversion, (2) unjust enrichment, and (3) accounting. *Id.*  The following month, PAI filed its Answer and counterclaimed for unjust enrichment.  Dkt. # 4.

In June 2024, WATM served discovery requests on PAI.  Dkt. # 39 at 3 ¶ 9.  The parties met and conferred on outstanding discovery issues in September 2024, November 2024, January 2025, and February 2025. *Id.* at 3 ¶ 13.  They did not resolve their issues. *Id.*  WATM now requests that the Court compel PAI to respond to its discovery requests.

### III
### DISCUSSION

A.    Legal Standards

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26 (b)(1).  That said, the 2015 amendments to Rule 26(b)(1), "emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (quotations and citation omitted).  And district courts have "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also U.S. Fid. & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion.").

The party seeking discovery must show that its discovery request is relevant and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1); *see also Availink, Inc. v. Tex.*

1    *Instruments, Inc.*, No. 22-CV-06947-EKL (PHK), 2025 WL 1592734, at *2 (N.D. Cal. June 5,

2    2025); *Hilyar v. Safeco Ins. Co. of Am.*, No. C24-0423JLR, 2025 WL 1582287, at *2 (W.D.

3    Wash. June 4, 2025).  And the party seeking to avoid discovery bears the burden of showing why

4    the discovery should not be permitted.  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 309 (D. Nev.

5    2019), *aff'd sub nom. V5 Techs., LLC v. Switch, Ltd.*, No. 2:17-CV-2349-KJD-NJK, 2020 WL

6    1042515 (D. Nev. Mar. 3, 2020) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.

7    1975)).  The party resisting discovery must "explain the reasons why the request at issue is

8    objectionable and may not rely on boilerplate, conclusory, or speculative arguments."  *Availink,*

9    *Inc.*, 2025 WL 1592734, at *2 (citing *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,

10   285 F.R.D. 481, 485 (N.D. Cal. 2012)).

11   B.    PAI's Interactions with Third Parties

12        Interrogatories Nos. 3, 4, 24 and Requests for Production Nos. 23, 36, and 41 concern

13   PAI's interactions with third parties, including other merchants in PAI's network.

14        Interrogatory No. 3 asks,

15        How many machines, terminals, or devices on PAI's network did PAI flag or
          identify as processing Scrip or Cashless ATM transactions during each of the
16        months from January 1, 2014 to the present? Please express your answer both in
          terms of total machines, terminals, or devices and the percentage of all machines,
17        terminals, or devices on PAI's network.

18   Dkt. # 39-1 at 16.

19        Interrogatory No. 4 requests that PAI "IDENTIFY all Independent Sales Representatives

20   ("ISRs"), Distributors, Market Partners, or Sub Market Partners on PAI's network from January

21   1, 2014 to the present that PAI flagged or identified as potentially processing Scrip or Cashless

22   ATM transactions."  *Id.*

23        Interrogatory No. 24 asks PAI to "IDENTIFY the five most recent ISRs, merchants, or

24   similar entities that YOU suspected of processing Scrip on YOUR network, the approximate date

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 4

YOU made such a determination, and a description of the actions taken by YOU in response." *Id.* at 45.

Request for Production No. 23 asks that PAI produce "[a]ll communications, from January 1, 2014 to the present, referencing or related to Scrip or Cashless ATMs that YOU sent to or received from any third party (e.g. ISRs, Distributors, Market Partners, or Sub Market Partners, etc.) that YOU flagged as potentially processing Scrip or Cashless ATM transactions." *Id.*

Request No. 36 asks PAI to

> PRODUCE documents sufficient to show the monthly transaction volume and terminal name and address for terminals onboarded onto PAI's network from January 1, 2019, to the present, by (1) Ella Cash (aka ATM One or RJH Capital Holdings); (2) Mobile Money; (3) Payomi; (4) Dynamic ATMs; (5) Infinity ATMs; or (6) Third Phase Processing.

*Id.* at 47.

And Request No. 41 asks PAI to "PRODUCE all written contracts and/or settlement agreements entered into between YOU (and/or The Brink's Company) and Ella Cash (aka ATM One or RJH Capital Holdings) in effect at any time from January 1, 2019 to the present."  *Id.* at 49.

WATM says that the above discovery requests are "central to resolving the parties' equitable claims" because the issues here involve "notions of fairness and justice."  Dkt. # 37 at 7 (citing *Young v. Young*, 164 Wash. 2d 477, 484, 191 P.3d 1258 (2008)).  The company says that discovery into how PAI deals with other merchants in its network "would corroborate" its position that PAI's scrip terminal "rules exist[ ] on paper" but that PAI does not enforce them because it "benefit[s] from ignoring them."  *Id.* at 8.

PAI responds that these discovery requests are disproportionate to the needs of this case and seek irrelevant information.  Dkt. # 49 at 9.  It says that WATM seeks information related to

1    PAI's relationship with other businesses, including WATM's competitors. *Id.* at 11.  PAI also

2    asserts that the discovery is irrelevant to whether "PAI properly withheld WATM's funds, or [if]

3    WATM owes PAI for millions of dollars of unlawful Scrip terminal transactions that WATM

4    sent to PAI for processing." *Id.*  The company says that the equitable claims concern the

5    business relationship between PAI and WATM—not PAI's interactions with third parties. *Id.* at

6    12.

7        The Court agrees with PAI.  WATM's discovery requests about PAI's interactions with

8    other businesses in its network is irrelevant and not proportional to the needs of the case.  For

9    instance, WATM brings an equitable claim for unjust enrichment against PAI.  And PAI likewise

10   asserts a counterclaim for unjust enrichment against WATM.  Under an unjust enrichment

11   theory, a party can "recover[ ] for the value of the benefit retained absent any contractual

12   relationship because notions of fairness and justice require it." *Young*, 164 Wash. 2d at 484; *see*

13   *also Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wash. App. 151, 160, 810 P.2d 12 (1991)

14   (stating that a party is unjustly enriched "when one retains money or benefits which in justice

15   and equity belong to another").  An unjust enrichment claims claim requires "(1) the defendant

16   receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances

17   make it unjust for the defendant to retain the benefit without payment." *Young*, 164 Wash. 2d at

18   484–85.  WATM seeks information about other businesses in PAI's network, such as the names

19   of other merchants PAI has flagged as potentially operating scrip terminals.  Although WATM

20   contends that this Court has "broad equitable powers," discovery into the names of PAI's other

21   merchants and PAI's interactions with those merchants is irrelevant to whether PAI has been

22   unjustly enriched at WATM's expense.[1]  *See* Dkt. # 56 at 2 (citing *Gormley v. Robertson*, 120

23

24

---

[1] PAI points out that it has produced documents about Project "Up in Smoke" in which other
businesses, including WATM, were terminated from PAI's network for using scrip terminals.  Dkt. # 49

Wash. App. 31, 40, 83 P.3d 1042 (2004)).  And discovery into, among other things, more than ten years' worth of information about "machines, terminals, or devices on PAI's network" is not proportional to the needs of this case.[2]

Furthermore, the case WATM relies on is distinguishable: In *Shields v. Fred Meyer Stores Inc.*, 741 F. Supp. 3d 915, 930 (W.D. Wash. 2024), the court, in resolving the defendant's Rule 12(b)(6) motion to dismiss, determined that the plaintiff stated a claim for unjust enrichment.  *Id.* at 930.  In that case, the plaintiff alleged that he was not reimbursed by the defendant for unpumped gasoline that he paid for in advance.  *Id.* at 920–21.  The defendant argued, among other things, that the plaintiff could not state a claim for unjust enrichment because he did "not plead any facts establishing [that the defendant] appreciated or knew of any alleged benefit conferred or that it retained unjustly."  *Id.* at 931 (citation omitted).  The court pointed out that the plaintiff alleged that the defendant's "employees knew that other customers had complained . . . about failing to receive proper refunds to their debit cards after having prepaid for gasoline and not pumping all of the gas for which they had paid."  *Id.* (citation omitted).

---

at 10.  PAI says that it included information about these third parties, including the amounts PAI withheld for each scrip terminal detected.  *Id.*

[2] WATM also brings claims for conversion and accounting.  For a conversion claim, a plaintiff must show, (1) that the defendant intentionally interfered with their chattel, (2) the defendant acted without lawful justification, (3) the plaintiff was entitled to possess the chattel, and (4) the plaintiff was deprived of possession.  *See Alhadeff v. Meridian on Bainbridge Island, LLC*, 167 Wash. 2d 601, 619, 220 P.3d 1214 (2009); *Potter v. Wash. State Patrol*, 165 Wash. 2d 67, 196 P.3d 691 (2008).  To state an accounting claim, a plaintiff must establish "(1) a fiduciary relation existed between the parties, or that the account is so complicated that it cannot be conveniently taken in an action at law; and (2) the plaintiff has demanded an accounting from the defendant and the defendant has refused to render it."  *State v. Taylor*, 58 Wash.2d 252, 262, 362 P.2d 247 (1961).  Both claims focus on the relationship between the plaintiff and the defendant.  Thus, discovery into PAI's business relationships with third parties is irrelevant to either claim.  To the extent WATM asserts that the requested discovery is relevant to the counterclaim, it has similarly not established such relevance.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL - 7

*Shields* was decided on a Rule 12(b)(6) motion to dismiss and says nothing about the relevancy or proportionality of any party's discovery request.  741 F. Supp. 3d at 915. Furthermore, the court highlighted the plaintiff's allegations about other customer complaints to show that the defendant knew about the refund issue.  WATM does not contend that discovery into PAI's interactions with third parties is necessary to show PAI's knowledge about the unremitted funds.  Instead, the company seeks this information to purportedly establish that PAI acted "contrary to equity" when it withheld the funds from WATM.  *See* Dkt. # 56 at 1 (citation omitted).

C.     Factors PAI Could Use to Identify Scrip Terminals

WATM asserts that PAI has scrip terminals on its network and that these terminals would be "easy to find if PAI was so motivated."  Dkt. # 37 at 10.  Interrogatories Nos. 22 and 23 and Requests for Production Nos. 37 and 38 concern factors WATM says supports this contention.

Interrogatory No. 22 asks that PAI "IDENTIFY all merchants on YOUR network, by name and address, that have more 3 terminals at a single address or at a single physical location. In lieu of listing each merchant, YOU may produce document(s) sufficient to identify each merchant by name, address, and terminal ID."  Dkt. # 39-1 at 44.

Interrogatory No. 23 asks that PAI "IDENTIFY all merchants on YOUR network, by name and address, that report being configured to dispense $5.00 and/or $10.00 denominations. In lieu of identifying each merchant, YOU may produce document(s) sufficient to identify each merchant by name, address, and terminal ID."  *Id.* at 45.

Request for Production No. 37 asks PAI to "PRODUCE documents sufficient to show monthly transaction volume from January 1, 2019, to the present from the merchants identified in answer to Interrogatory No. 22."  *Id.* at 48.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

And Request No. 38 asks PAI to "PRODUCE documents sufficient to show monthly transaction volume from January 1, 2019, to the present from the merchants identified in answer to Interrogatory No. 23." *Id.*

WATM contends that documents about multiple terminals in a single location is relevant because many cash dispensing merchants "do not have space or the need for multiple large, bulky cash-dispensing machines in a single store." Dkt. #37 at 11.  The company also says that the $5 and $10 denomination discovery is relevant because scrip transactions are generally rounded to the nearest $5 increment.  *Id.*  The company argues that whether PAI enforced its rule against scrip terminals against WATM while allowing other merchants to process scrip is relevant to "what is fair and equitable between the parties." *Id.* at 13.

PAI counters that the discovery WATM is seeking is not relevant or proportional to the needs of this case.  Dkt. # 49 at 13.  The company contends that it has disclosed to WATM the factors it used to detect scrip terminals prior to and during Project "Up in Smoke." *Id.*  It says that discovery into what PAI could do to detect scrip terminals is a "cleverly disguised way to get discovery about WATM's competitors." *Id.*  PAI underscores that this discovery is not relevant to the actions taken by WATM and PAI.[3]

WATM contends that it is entitled to discovery that would "make a fact more or less probable than it would be without the evidence," but it does not show the relevance of discovery about the identities of other merchants that have three terminals in one location and the identities of other merchants who dispense money in $5 or $10 denominations.  *See* Dkt. # 37 at 12 (citing FRE 401(a)).  Although WATM contends that this information would indicate that these other

---

[3] PAI also notes that if WATM had three terminals in a single location, it has provided this information to WATM.  Dkt. # 49 at 13.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 9

merchants have scrip terminals,[4] the claims here concern the relationship between WATM and

PAI.  The issues do not concern the business operations of other merchants in PAI's network.

And PAI has provided WATM with discovery about the factors it uses to detect scrip terminals

in its network.  *See, e.g.*, *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.

2005) (noting that discovery requests must be "reasonably calculated to lead to the discovery of

admissible evidence").

D.      Applicable Laws & Regulations

        Under Federal Rule of Civil Procedure 33, "an interrogatory is not objectionable merely

because it asks for an opinion or contention that relates to fact or the application of law to fact."

Fed. R. Civ. P. 33(a)(2); *see also S.E.C. v. Berry*, No. C07-04431 RMW HRL, 2011 WL

2441706, at *2 (N.D. Cal. June 15, 2011) ("Rule 33 of the Federal Rules of Civil Procedure

governs contention interrogatories which seek to discover the factual basis for allegations in a

complaint.") (internal quotation omitted).[5]  But "the distinction between the application of law to

fact and a legal conclusion is 'not always easy to draw.'"  *Benson Tower Condo. Owners Ass'n v.

Victaulic Co.*, 105 F. Supp. 3d 1184, 1196 (D. Or. 2015), *aff'd*, 702 F. App'x 537 (9th Cir. 2017)

---

[4] PAI disputes the usefulness of this information in detecting scrip terminals.  *See* Dkt. # 49 at 13–14.

[5] As Magistrate Judge Wayne Brazil explained,

[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate *what* it contends. Some people would define contention interrogatories as embracing only questions that ask another party *whether* it makes some specified contention. Interrogatories of this kind typically would begin with the phrase 'Do you contend that....' Another kind of question that some people put in the category 'contention interrogatory' asks an opposing party to state all the *facts* on which it *bases* some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the *evidence* on which it *bases* some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to *how the law applies to facts.* A variation on this theme involves interrogatories that ask parties to spell out the *legal basis* for, or theory behind, some specified contention.

*In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985) (emphasis in original).

(quoting *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW

NC, 2012 WL 4743121, at *2 (N.D. Cal. Oct. 3, 2012)). "What is clear, however, is that Rule 33

does not permit interrogatories directed to issues of 'pure law,' *i.e.* legal issues unrelated to the

facts of the case." *Santos v. Baca*, No. 2:11-cv-01251-KJD-NJK, 2016 WL 1611584, at *1 (D.

Nev. Apr. 21, 2016) (internal citation omitted).

Interrogatory No. 14 requests that PAI "IDENTIFY all 'applicable laws and regulations'

PAI was referring to in paragraph 4 of its Answer and Counterclaim (see Dkt. # 4 at 5–6),

including the date PAI contends such law or regulation was applicable." Dkt. # 39-1 at 21.

WATM says that PAI "alleged in its Answer and Counterclaim that WATM violated the law."

Dkt. # 37 at 10. It contends that this Interrogatory is relevant to whether WATM's transactions

violated the law. *Id.* PAI responds that it should not be required to respond to this discovery

request because "it is a hornbook legal conclusion." Dkt. # 49 at 14.[6]

WATM is seeking information as to PAI's allegation that the purportedly operative

agreement between the parties requires WATM to comply with all "applicable laws and

regulations." *See* Dkt. # 4 at 9.[7] PAI's counterclaim does not specify the "applicable laws or

regulations." *Id.* As noted above, the party resisting discovery has the burden of showing why

the discovery should not be allowed and must clarify, explain, and support its objections. *See*

*U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (citation

omitted). The Interrogatory does concern a legal issue here. *See Santos*, 2016 WL 1611584, at

*1. To the extent that PAI is alleging that WATM's conduct violated a specific law or

---

[6] In its reply brief, WATM asserts that PAI cannot raise this objection. Dkt. # 56 at 7. WATM asserts that PAI never raised this issue before. *Id.* But PAI's response to Interrogatory No. 14 states, "PAI objects to this interrogatory to the extent it seeks a legal conclusion from PAI." Dkt. # 39-1 at 21. Thus, PAI has not waived its objection that Interrogatory No. 14 calls for a legal conclusion. *Cf. Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) ("[I]nterrogatory objections not included in a timely response are waived[.]").

[7] WATM disputes that it is bound by this agreement. *See generally* Dkt. # 37 at 6.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 11

regulation, WATM is entitled to know the law or regulation at issue so that it can defend itself against PAI's countersuit. *See O'Connell*, 245 F.R.D. at 649 (permitting the defendant's interrogatories that request the plaintiff "to discuss and explain the nature of the contentions she makes in the Second Amended Complaint and, further, asks [the plaintiff] to give detailed information regarding the factual bases for her contentions); *see also Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) (noting that "contention interrogatories may in certain cases be the most reliable and cost-effective discovery device, which would be less burdensome than depositions at which contention questions are propounded") (citing *McCormick–Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991)).[8]

E.    Discovery Responses Invoking Rule 33(d)

WATM contends that PAI stated in its answers to Interrogatories Nos. 9 and 10 that it would produce records pursuant to Federal Rule of Civil Procedure 33(d). Dkt. # 37 at 14–15.[9] WATM says that PAI has not provided any information about which records it is relying on for these interrogatory responses. *Id.* at 15. PAI says that the Declaration of Ryan Borneman, which PAI filed in response to WATM's motion to compel, identifies Bates-stamped documents responsive to these discovery requests. Dkt # 49 at 14.

Interrogatory No. 9 requests that PAI "IDENTIFY, by month, the total amount of funds PAI withheld from WATM for any reason, including without limitation PAI's position that

---

[8] As the *Cable* court noted, "[I]f the concern in answering a contention interrogatory before discovery has been completed, or even substantially done, is that the answer to the interrogatory may limit the party's proof at trial, that concern is misplaced in that, among other things, the trial court may permit the withdrawal or amendment of an answer to an interrogatory. *See Cable & Computer Tech., Inc.*, 175 F.R.D. at 651.

[9] WATM identifies Request for Production No. 24 as related to these interrogatories. Dkt. # 37 at 14.

1    WATM violated PAI's rules, and describe the reason for such withholding of funds." Dkt. # 39-

2    1 at 19.

3        Interrogatory No. 10 requests that PAI "IDENTIFY, by month, the total amount of

4    revenue PAI generated from transactions on WATM's machines, terminals, or devices from

5    December 1, 2019 to the present." *Id.*

6        Request for Production 24 asks that PAI provide "All DOCUMENTS referenced or relied

7    upon by YOU in responding to Interrogatory Nos. 9 and 10 above." *Id.* at 34.

8        In response to Interrogatories Nos. 9 and 10, PAI stated, "[P]ursuant to Federal Rule of

9    Civil Procedure 33(d), PAI refers WATM to business records that will be produced within a

10   reasonable time following the service of these responses." *Id.* at 19.  In response to Request No.

11   24, PAI stated that it would produce responsive documents. *Id.* at 34.

12       Rule 33(d) provides an alternative method for a party to respond to an interrogatory:

13   If the answer to an interrogatory may be determined by examining, auditing,
     compiling, abstracting, or summarizing a party's business records (including
14   electronically stored information), and if the burden of deriving or ascertaining the
     answer will be substantially the same for either party, the responding party may
15   answer by:

16   (1) specifying the records that must be reviewed, in sufficient detail to enable the
         interrogating party to locate and identify them as readily as the responding party
17       could; and

18   (2) giving the interrogating party a reasonable opportunity to examine and audit the
         records and to make copies, compilations, abstracts, or summaries.
19
20   The Advisory Committee Notes state that the party providing the records must "offer them in a

21   manner that permits the same direct and economical access that is available to the party." *See*

22   Notes of Advisory Committee on 1980 Amendment to Rule 33(c) (renumbered Rule 33(d) in

23   1993).

24

One of PAI's attorneys, Mr. Borneman, stated in his declaration that "PAI has produced to WATM information about the amount of funds withheld from WATM and the revenue generated by PAI on WATM transactions. I refer Plaintiff's counsel to documents Bates stamped beginning PAI_000225; PAI_000226; PAI_0016290; PAI_0016291; PAI_0018627; PAI_0018628; PAI_0018629; PAI_0018630." *Id.* at 2 ¶ 10.  PAI did not provide this list of Bates-stamped documents to WATM as a supplemental response to Interrogatories Nos. 9 and 10.  Instead, PAI provided WATM with this information in response to WATM's motion to compel.  "[U]nder Rule 33(d), the responding party chooses to produce business records in answer to the interrogatories—not to avoid answering them."  *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999).  Further "a responding party has the duty to specify, by category and location, the records from which answers to interrogatories can be derived."  *Id.* (quoting *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inv. Corp.*, 711 F.2d 902, 906 (9th Cir.1983)).  Thus, Mr. Borneman's declaration, which merely lists eight Bates-numbered documents and does not specify whether the documents are responsive to one or both of the interrogatories is insufficient.[10]  *See, e.g.*, *State of Colo. v. Schmidt–Tiago Constr. Co.*, 108 F.R.D. 731, 735 (D. Colo. 1985) ("The appropriate answer when documents are to be used [under Rule 33(d)] is to list the specific document provided the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory").

Accordingly, PAI must supplement its responses to Interrogatories Nos. 9 and 10 by specifying the documents responsive to each Interrogatory.  As for Request for Production 24, to

---

[10] PAI says that it has made ten document productions to WATM, amounting to 7,600 documents produced.  As the *O'Connor* court pointed out, "[W]hen voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the searcher to the documents responsive to the interrogatories."  *O'Connor*, 185 F.R.D. at 278.

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 14

the extent that any responsive, non-privileged documents have not yet been produced, PAI must provide these documents to WATM.

## IV

### CONCLUSION

Based on the above, the Court GRANTS in part and DENIES in part WATM's motion to compel as follows:

- The motion is DENIED as to Interrogatories Nos. 3, 4, 22, 23, and 24;

- The motion is DENIED as to Requests for Production Nos. 23, 36, 37, 38 and 41;

- The motion is GRANTED as to Interrogatories Nos. 9, 10, 14;

- The motion is GRANTED as to Request for Production No. 24.

Dated this 23rd day of June, 2025.

John H. Chun
United States District Judge

ORDER GRANTING IN PART AND DENYING IN
PART MOTION TO COMPEL - 15